### HAMILTON *v.* KINGSBURY and another.

*(Circuit Court, N. D. New York.* ———, 1880.)

1. PATENT—ASSIGNMENT—NOTICE.—*Held*, under the circumstances of this case, that there was enough in the terms "right, title, and interest," in the assignment of a patent, to put any purchaser from the assignors, immediate or subsequent, on inquiry, and to charge him with notice of what such inquiry, if made of the grantor of the assignors, would have disclosed.

2. SAME—NOTICE—ESTOPPEL.—*Held*, *further*, that such grantor was not bound by any suppression of the truth by the said assignors, or any failure upon their part to disclose the exact condition of their title, so long as they assumed to convey only their "right, title, and interest."

*Geo. H. Lathrop,* for plaintiff.

*William F. Cogswell,* for defendants.

BLATCHFORD, C. J.   When this case was before the court, on the original bill and the plea thereto, it was decided (14 O. G. of Pat. Off. 448) that the proper construction of the recorded conveyance of August 27, 1866, from Milton A. Hamilton to Lombard & Thompson, was that Lombard & Thompson acquired thereby the right to make as well as the right to use, and to sell to be used, the patented saw hangings, as they are or may be applied to muley or single upright mill saws, for, to, and in the state of New York; such right to use and to sell to be used being exclusive, but the grantor reserving to himself a right to make in common with the grantees.   The plea was allowed, and the plaintiff then amended the bill by setting forth two unrecorded instruments, made August 27, 1866, one executed by Milton A. Hamilton of the one part and Lombard & Thompson of the other part, and the other executed by Milton A. Hamilton and then delivered to Lombard & Thompson.   There was a plea to the amended bill, and a replication to the plea, and proofs were taken thereon. The main point of the plea was that the defendants were *bona fide* purchasers under the said recorded conveyance of August 27, 1866, without notice of either of the said unrecorded instruments of that date.   The case was submitted to the court on briefs, without oral argument, (17 O. G. of Pat. Off. 147,) and the court overruled the plea.   The plaintiff contended that under the three instruments of August 27, 1866, taken together, Lombard & Thompson acquired no right to make the invention, except in a certain contingency which had never happened; that the three instruments were contemporaneous and were all portions of the same transaction, and must all be read together to determine the intent of the parties to the transaction; that the three instruments were consistent with no intention not to convey to Lombard & Thompson, by the recorded conveyance, any right to manufacture the invention; that if the recorded conveyance gave to them the right to manufacture, the other two instruments had no meaning; and that the instruments were, (1) a license,

which in terms gave the licensees no power to manufacture; (2) an agreement by which the licensor agreed to furnish the hangings to the licensees at fixed prices, and the licensees agreed that they would not manufacture so long as the licensor kept his agreement; (3) a permission from the licensor to the licensees to manufacture in case the licensor failed to perform his agreement. The court held that the three in-instruments, taken together, must have the interpretation claimed for them by the plaintiff. The defendants contended that they were *bona fide* purchasers without notice of any instrument but the recorded conveyance of August 27, 1866, and that they were protected from any unrecorded agreement between Milton A. Hamilton and Lombard & Thompson, in the absence of any actual notice thereof. On this question the court said: "The recording act in force when the defendants took their conveyance from Strong & Woodbury, on the tenth of December, 1869, was section 11 of the act of July 4, 1836, (5 U. S. St. at Large, 121,) which provided 'that every patent shall be assignable in law, either as to the whole interest or any undivided part thereof, by any instrument in writing, which assignment, and also every grant and conveyance of the exclusive right under any patent to make and use, and to grant to others to make and use, the thing patented, within and throughout any specified part or portion of the United States shall be recorded in the patent-office within three months from the execution thereof.' It is well settled that mere licenses or contracts conferring the limited and not the exclusive right to exercise some of the privileges secured by the patent are not the subjects of regulation by this statute; and that it relates solely to grants or conveyances of the exclusive right or legal estate vested in the patentee, which leave no interest in the patentee for the particular territory and the particular right to which they relate. Curtis on Patents, (3d Ed.) § 179. Within this rule, the recorded conveyance of August 27, 1866, from Milton A. Hamilton to Lombard & Thompson, is not an assignment of the whole interest in the patent, or any undivided part therof; nor is it a grant or conveyance of the exclusive right, under the patent, to make

and use, and to grant to others to make and use, the thing patented, within and throughout any specified part or portion of the United States. It is only a license. It reserves to the grantor 'the right to manufacture the said invention.' Whatever right to manufacture the grantees acquired by the face of it, such right was not exclusive in them; therefore, such instrument was not one required to be recorded. Nor were the other two instruments of August 27, 1866, instruments which it was necessary to record. The recording of the instrument of August 27, 1866, which was recorded, was not notice to the defendants that they could safely rely on the record as showing the whole transaction between the parties to the instrument in respect to its subject-matter. The three instruments were all of them valid without recording, as against the defendants, although *bona fide* purchasers without actual notice. Although the recorded instrument of August 27, 1866, may, on its face, convey the right to make to the grantees, seeing it on the record is of no more avail to the defendants than if they had seen it out of the record. The existence of the three instruments, taken together, as limiting the right of Lombard & Thompson, affects the defendants with the consequences of such limitation, for they can have no greater right than Lombard & Thompson had."

Before any order overruling the plea to the amended bill has been made, the defendants now present a petition to the court for a rehearing or a reargument of the case. The ground of the application is set forth in an affidavit made by Mr. Cogswell, the counsel for the defendants, who prepared the brief for the defendants, on the plea to the amended bill, which states that he understood that the case turned on actual notice to the defendants' assignors of the unrecorded agreements between them and Milton A. Hamilton, limiting, as was claimed, the operation of the license given by the latter to such assignors; that he was furnished with the plaintiff's brief just before the case was submitted to the court, and the question upon which the case was decided did not attract his attention until he saw the opinion of the court; that justice to the defendants requires that the case should be

reargued, to the end that the question may be presented whether Milton A. Hamilton, having conferred upon Lombard & Thompson the apparent right to manufacture and sell the patented invention without restriction or reservation, and the power to assign such right to others without such restriction, is not, and the plaintiff, as his assignee, is not, estopped from setting up, as against the defendants, who are innocent third parties, and have bought in good faith such right, relying upon the unconditional and unrestricted license, the limitation or restriction of said license contained in a separate instrument not in any way referred to in said license.

The amended bill alleged that the defendants had constructed machines containing the patented invention with full knowledge of the facts alleged in the bill, among which facts was the existence of the said two unrecorded instruments. The defendants denied knowledge and notice of the existence of said two instruments. No evidence of actual notice of either of them to the defendants was given by the plaintiff.

It is contended for the defendants that a point conclusive against the plaintiff's right was not brought to the attention of the court; that the court held, in its decision on the plea to the original bill, that the words "legal representatives," in the recorded conveyance of August 27, 1866, included "assigns;" that such conveyance was absolute and unconditional, as was held in the same decision, except a reservation not applicable to the question in hand; that the evidence shows that the defendants and their immediate assignors were *bona fide* purchasers for value, without notice; that it is a rule of law that where the owner of property has conferred upon another person a power to dispose of it, and an innocent third party has dealt with such person upon the assumption that he possessed such power so apparently conferred, such owner is estopped from asserting that the power was not what it purported to be, but was limited or restricted by some secret agreement; that the purchase by the defendants was made upon the faith of the title which Milton A. Hamilton had apparently given to Lombard & Thompson, and it would be contrary to justice and good conscience to

permit him, or the plaintiff as his assignee, by a title derived from him subsequently to his conveyance to Lombard & Thompson, to assert his real title against the defendants; that a contrary rule would operate as a fraud by Milton A. Hamilton upon the defendants; that the case is one for the application of the principle in favor of the defendants that where one of two innocent parties must sustain loss from the fraud of a third, such loss must fall upon the one, if either, whose act has enabled such fraud to be committed; that the defendants are innocent purchasers, upon the faith of the apparent title conferred upon Lombard & Thompson; that any fraud which has been committed has been committed by virtue of the evidence of title which the plaintiff's assignor put into the hands of Lombard & Thompson; and that frauds may be perpetrated on the public if the owners of patents, who give absolute assignable licenses, are permitted to treat as infringers purchasers of such licenses, by virtue of a secret agreement entered into at the time of the execution of the license.

Two cases are referred to by the defendants: *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325, and *Moore* v. *Metropolitan Nat. Bank,* 55 N. Y. 41. The head note of the first case is that where the owner of property confers upon another an apparent title to or power of disposition over it, he is estopped from asserting his title as against an innocent third party, who has dealt with the apparent owner in reference thereto, without knowledge of the claims of the true owner; and that the rights of such third party do not depend upon the actual title or authority of the one with whom he dealt, but upon the act of the owner, which precludes him from disputing the title or authority he has apparently conferred. The doctrine was limited, by the decision, to the case where the owner had entrusted to another, not merely the possession of the property, but written evidence over his own signature of title thereto, and of an unconditional power of disposition over it. The same doctrine was applied in *Moore* v. *Metropolitan Nat. Bank,* where it was held that the *bona fide* purchaser for value of a non-negotiable chose in action from one upon whom the

owner had, by written assignment, conferred the apparent absolute ownership, where the purchase is made upon the faith of such apparent ownership, obtains a valid title as against the real owner, who is estopped from asserting a title in hostility thereto.

Since the decision in this case on the plea to the amended bill, it has been stipulated in writing by the plaintiff that Edmund F. Woodbury would testify that the consideration paid for the conveyance of April 29, 1868, from Lombard & Thompson to Russell, Reese, and the firm of Strong & Woodbury, (consisting of Henry A. Strong and Edmund F. Woodbury,) was the sum of $4,000, in property and cash; and that the defendants respectively would testify that they paid on the execution and delivery of the conveyance from Strong & Woodbury, of December 10, 1869, to them, the sum of $1,000 in cash; and that such stipulation be filed and made a part of the record, on the application for a rehearing, with the same effect as though such testimony had been regularly put in by the defendants originally.

In the proofs, Edmund T. Woodbury testified that he negotiated with Lombard the purchase covered by the conveyance of April 29, 1868; that he never heard until the spring of 1877 of the two unrecorded instruments of August 27, 1866; and that the only agreement between Hamilton and Lombard & Thompson, of which he had any information, prior to 1877, was the recorded conveyance of August 27, 1866.

The conveyance of April 29, 1868, from Lombard & Thompson to Russell, Reese, and Strong & Woodbury, recites that "whereas, by virtue of assignment from Milton A. Hamilton, dated August 27, 1866, the right for the state of New York was vested in us, Clinton A. Lombard and John Thompson;" and then it conveys all their "right, title, and interest" in the invention, as secured to them by the patent, for, to, and in the state of New York. The conveyance of July, 1868, from Reese to Russell and Strong & Woodbury, recites that "by virtue of assignment dated August 27, 1866, the right for the state of New York was vested in Clinton A. Lombard and John Thompson;" and that by virtue of the assignment from

them of April 29, 1868, "the right for the state of New York" was vested in Russell, Reese, and Strong & Woodbury, and then it conveys all the "right, title, and interest" of Reese in the invention, as secured to him by the patent, for, to, and in the state of New York. The conveyance of December 10, 1869, from Strong & Woodbury to the defendants, recites that by virtue of assignment from Hamilton, of August 27, 1866, "the right for the state of New York" was vested in Lombard & Thompson; and that by virtue of the assignment from them of April 29, 1868, "the right for the state of New York" was vested in Russell, Reese, Strong & Woodbury; and that by virtue of the assignment from Reese, of July 15, 1868, "all his right, title, and interest in and to said right for the state of New York" was vested in Russell, Strong & Woodbury; and then it conveys all "our right, title, and interest therein, as secured by the letters patent and assignment before mentioned, which consists of the right, title, and interest" of Russell, Strong & Woodbury "to the right for the whole state of New York, except one-half interest held by Robert P. Russell and the counties of Cayuga and Franklin, previously assigned to John Busley and Sidney A. Paddock, respectively."

The conveyance of April 29, 1868, from Lombard & Thompson, conveys only their "right, title, and interest" in the invention. The conveyance from Reese conveys only his "right, title, and interest" in the invention. The conveyance from Strong & Woodbury conveys only their "right, title, and interest." No recitals in those instruments caused them to operate to convey to the defendants anything more than the right, title, and interest of Lombard & Thompson, whatever it was, on the twenty-ninth of April, 1868. It is true that the conveyance of April 29, 1868, and the subsequent conveyances, recite that what was vested in Lombard & Thompson, by the assignment to them, was "the right for the state of New York." But Milton A. Hamilton was no party to those conveyances. He did not deal with any one but Lombard & Thompson. Even if they be regarded as acting as his agents in subsequently conveying, they conveyed only their "right,

title, and interest." What that was has beeen defined. The parties taking from and under them were, by the form of the conveyance from them, referred to Hamilton to ascertain what, in fact, the "right, title, and interest" of Lombard & Thompson was. What it was depended on the three instruments of August 27, 1866, taken together, and an inquiry of Hamilton would have disclosed that fact. There was enough, in the terms "right, title, and interest," in the assignment from Lombard & Thompson, to put any purchaser from them, immediate or subsequent, on inquiry; and to charge him with notice of what such inquiry, if made of their grantor, would have disclosed. While by the recorded assignment of August 27, 1866, the right to make may appear to have been invested in Lombard & Thompson, yet they did not undertake to convey what that assignment appeared to convey, but only their "right, title, and interest" as it in fact existed. The case, therefore, does not fall within the principle of the two cases cited for the defendants. In this case no one made any inquiry of any person but Lombard & Thompson. Neither Hamilton nor the plaintiff are bound by any suppression of the truth by them, or any failure on their part to disclose all three of the instruments, so long as they assumed to convey only their "right, title, and interest."

It follows that the prayer of the petition must be denied.